8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Maria Irma Belinda Lugue VERGARA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70521.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1993.*
Decided Sept. 30, 1993.
 
 Before: FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Maria Irma Belinda Lugue Vergara, a Philippine national, seeks review of the Board of Immigration Appeals' denial of her request for voluntary departure from the United States. Our inquiry is limited to whether the Board, in denying voluntary departure, committed an abuse of discretion. We hold that it did not and therefore affirm.
 
 I.
 
 3
 Maria Irma Belinda Lugue Vergara, known as Maribel, was living with her mother in the Philippines when the pair learned that Maribel's maternal grandfather was dying in the United States. On several occasions Maribel and her mother sought visas from the U.S. Consulate in Manila in order to visit the grandfather. These visa applications were denied. The Vergaras then contacted a Filipino travel agency which, for a fee, issued two passports under assumed names.
 
 
 4
 The Vergaras arrived in the United States in 1982. Maribel's grandfather succumbed to his illness shortly thereafter. Maribel had two aunts and a grandmother here, and, after the grandfather's death, Maribel and her mother decided to remain. To that end, Maribel's mother suggested that Maribel marry a man she had been dating, who was a United States citizen. After some hesitation Maribel agreed.
 
 
 5
 Following her marriage Maribel got a job as a live-in helper to a woman named Olive Foley, who was in her nineties. Although Maribel and her husband rented an apartment together, Maribel spent all of her time at Ms. Foley's home.
 
 
 6
 The INS ultimately investigated Maribel and concluded her marriage was fraudulent. Maribel conceded she was subject to deportation but asked to be permitted voluntary departure. She testified she could get the money to pay for her transportation and would leave voluntarily. The immigration judge rejected Maribel's request and ordered her deported. The Board of Immigration Appeals affirmed.
 
 
 7
 Maribel has never been arrested for a crime and has never been a public charge. In addition to her work for Ms. Foley, she volunteers as a teacher of handicapped children at Seton Hospital in Daly City.
 
 
 8
 The Board of Immigration Appeals had jurisdiction over Maribel's appeal under 8 C.F.R. §§ 3.1(b), 242.21. We have jurisdiction over Vergara's petition for review under 8 U.S.C. § 1105a.
 
 II.
 
 9
 Voluntary departure is an alternative to deportation. The BIA is permitted, but not required, to grant voluntary departure in lieu of deportation to aliens able to afford their own transportation and of "good moral character." 8 U.S.C. § 1254(e). The alien bears the burden of establishing good moral character. Estrada-Posadas v. INS, 924 F.2d 916, 920 (9th Cir.1991).
 
 
 10
 The decision to grant or deny voluntary departure is a wholly discretionary one for the Board. Estrada-Posadas, 924 F.2d at 920. This court examines only "whether discretion was actually exercised and whether the manner in which it was exercised was arbitrary or capricious." Id.
 
 
 11
 Factors relevant to whether voluntary departure is warranted include (1) the alien's previous violations of immigration laws or of other laws, (2) her manner of entry into this country, (3) her ability to depart at her own expense, and (4) her showing that in all good faith she will depart in the time allotted. In Re Gamboa, 14 I & N Dec. 244, 248 (BIA 1972); In re M---, 4 I & N Dec. 626, 627 (BIA 1952).
 
 
 12
 In addition, "[d]iscretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." Gamboa, 14 I & N Dec. at 248.
 
 III.
 
 13
 The question here is not whether Maribel meets the statutory prerequisite of good moral character. The government concedes that she does. But satisfaction of that prerequisite simply means that the BIA may, but need not, exercise its discretion to permit voluntary departure. We consider only whether that discretion "was actually exercised and whether the manner in which it was exercised was arbitrary or capricious." Estrada-Posadas, 924 F.2d at 920.
 
 
 14
 Maribel argues that the BIA abused its discretion by not considering the many mitigating and equitable factors in this case. Specifically, she claims that the BIA failed to consider (1) that her improper entry into the United States was arranged by her mother; (2) that she is a passive, obedient individual who has been subject to her family's domination from an early age; (3) that she entered the U.S. only to visit her dying grandfather, and only resorted to the false passport after repeated denials of a visa; (4) that her "sham" marriage was engineered by her family, and involved a man with whom she had been romantically involved for a year; (5) that obtaining a false passport is commonplace in the Philippines; and other factors.
 
 
 15
 But it is clear that the BIA did consider each of these factors. It mentioned each one expressly in its opinion. The BIA even considered additional evidence Maribel submitted for the first time on appeal.
 
 
 16
 To be sure, there are a number of factors which weigh in Maribel's favor. She has never been arrested or convicted for any crime. She has indicated an ability to pay for her own departure, and evinced a good faith willingness to leave the country voluntarily. And she has close family ties in the United States--her mother and grandmother are now lawful permanent resident aliens, and her two aunts are United States citizens.
 
 
 17
 Moreover, there are humanitarian considerations which weigh in Maribel's favor. In addition to the close attachment she has to her mother, she takes care of 95-year-old Olive Foley on a 24-hour-a-day basis.
 
 
 18
 But the decision was not ours to make. There is no evidence that the BIA failed to review this or any other evidence, or that it acted arbitrarily or with caprice. That being the case, our inquiry is necessarily at a close.
 
 
 19
 The decision of the Board of Immigration Appeals must be, and hereby is, AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3